# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **HENRY LAMONT JONES, *et al.*** | **No. 10-CR-60** |

## RULING ON MOTION TO SUPPRESS

This matter is presently before the Court on a Motion to Dismiss, or in the Alternative, a Motion to Suppress (Doc. No. 49), filed by the defendant, Henry Jones (hereafter "Jones"). The Government has filed a Response to the Motion (Doc. No. 53). An evidentiary hearing was held on December 1, 2010 (hereafter "the suppression hearing"), and the parties have filed post-hearing briefs (Doc. Nos. 69 & 70). The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the defendant's motion should be **DENIED** for the following reasons.

## FACTUAL BACKGROUND

On August 30, 2006, in response to a subpoena, the defendant provided testimony to a grand jury concerning his knowledge of the business practices of Unique Medical Solution, Inc. (hereafter "Unique"), a company being investigated for Medicare fraud. At the outset of the defendant's testimony, Assistant United

States Attorney Rene Salomon (hereafter "Salomon") advised Defendant that, "as a witness, you have the right to refuse to answer any question, the truthful answer to which might incriminate you" and "the right to consult with a lawyer outside the grand jury."[1] Defendant responded that he understood these rights,[2] and confirmed this understanding during the suppression hearing.[3]

On February 18, 2009, Defendant again provided testimony to the grand jury in response to a subpoena. Defendant was informed that, "as a witness, you have the right to refuse to answer any question, the truthful answer to which might incriminate you" and "the right to consult with a lawyer outside this grand jury room."[4] Defendant responded that he understood these rights,[5] and, again, confirmed this understanding during the suppression hearing.[6] While being questioned, Defendant was also advised that he was a "subject of inquiry" but not a "target" of the investigation.[7] Salomon explained that "[p]eople are targets

---

[1] United States Exhibit No. 1, Transcript of Testimony of Henry Jones dated 8/30/06, 4:17 – 5:4.

[2] **Id.** at 5:8.

[3] Record Document No. 57, Transcript of Suppression Hearing, 47:1-14.

[4] United States Exhibit No. 2, Transcript of Testimony of Henry Jones dated 2/18/09, 5:7-16.

[5] **Id.** at 5:12.

[6] Record Document No. 57, Transcript of Suppression Hearing, 51:15-25.

[7] United States Exhibit No. 2, Transcript of Testimony of Henry Jones dated 2/18/09, 10:1-22.

when we've made up our mind that somebody needs to be charged or arrested and indicted" but that "facts are trying to be collected and examined to determine if wrongdoing has happened" and that Defendant's conduct remained the subject of inquiry.[8] After the foregoing discussion, Defendant requested to speak with an attorney and the questioning ceased.[9] Following the February 18 grand jury hearing, and while outside the courtroom, Defendant alleges that Salomon told him that he "didn't hear anything in [Defendant's] testimony that would suggest that [Defendant was] in any kind of trouble" and encouraged Defendant to tell Christopher Alexander (hereafter "Alexander"), Defendant's attorney, that "everything was okay."[10]

On March 4, 2009, Defendant again testified in front of the grand jury. He was, again, informed that he had the "right to refuse to answer any question the truthful answer to which might incriminate," that he had "the right to consult with a lawyer," and that he was a subject of inquiry.[11] Defendant indicated that he understood his rights and his status as a subject.[12] At the suppression hearing,

---

[8] United States Exhibit No. 2, Transcript of Testimony of Henry Jones dated 2/18/09, 10:1-22.

[9] **Id.** at 15:4-13.

[10] Record Document No. 57, Transcript of Suppression Hearing, 71:21 – 72:13.

[11] United States Exhibit No. 3, Transcript of Testimony of Henry Jones dated 3/4/09, 4:3-10, 5:22 – 7:24   .

[12] **Id.** at 4:3-10, 6:5, 7:1-24.

Defendant confirmed that he understood his rights before the grand jury,[13] and that Salomon had clearly made him aware of his status as the subject of an investigation.[14]

Following the conclusion of Defendant's testimony on February 18, but before March 4, 2009, a telephone conversation occurred between Salomon and Alexander. Alexander's affidavit states that during the conversation, Salomon told him that Jones was "not under investigation and that he did not foresee any reason why Mr. Jones would become a suspect in a federal probe" and that "Mr. Jones was a witness only, not a target or subject."[15] In stark contrast, Salomon's affidavit states that he advised Alexander, during the telephone conversation, that Jones and his companies were the "subjects of inquiry."[16]

On April 28, 2010, a federal grand jury returned an indictment charging Jones and several others with conspiracy to commit health care fraud and conspiracy to defraud the United States and receive and pay health care kickbacks. Those charges are the basis of the instant prosecution.

---

[13] Record Document No. 57, Transcript of Suppression Hearing, 54:14-20.

[14] Record Document No. 57, Transcript of Suppression Hearing, 63:12 – 64:20.

[15] United States Exhibit No. 5, Affidavit of J. Christopher Alexander.

[16] Defense Exhibit No. 4, Affidavit of Rene Salomon.

## DISCUSSION

Defendant seeks to dismiss the indictment or, alternatively, to suppress testimony and documents provided by Defendant during the grand jury hearings. Specifically, Defendant contends that: (1) he was granted immunity by the Government; (2) he was advised of "some, but not all, of his Fifth Amendment rights" prior to testifying before the grand jury; (3) the "indictment should be quashed because he made incriminating statements to the grand jury prior to indictment;" (4) evidence should be excluded because it was given while Defendant had objective reason to believe he was not under investigation, he was a putative defendant while testifying, and/or the Government used unfair tactics to elicit the grand jury testimony; and (5) the Fifth Amendment prohibits the use of documents produced pursuant to the grand jury subpoena because Defendant was "compelled.. to be a witness against himself." Each of Defendant's contentions will be addressed in turn.

## I. There is No Evidence Indicating That Defendant Was Granted Immunity

In his motion, and during the suppression hearing, Defendant asserted that he had been granted immunity to testify.[17] When asked during the suppression hearing what he based his claim of immunity on, Defendant responded as follows:

---

[17] Record Document No. 49, Defendant's Motion to Dismiss / Suppress, p. 2; Record Document No. 57, Transcript of Suppression Hearing, 6:15-18.

**A.** The fact that no one ever came to me and told me that I was being looked at; that I had done anything wrong; that I was doing anything illegal; that I was being put under arrest. And the fact that when I talked with the prosecuting attorney, he told me that I was providing information for an investigation that they were having. And they never once told me that they were investigating me.[18]

Immunity may be either "transactional" or "use and derivative use" immunity.[19] Transactional immunity "accords full immunity from prosecution for the offense to which the ... testimony relates."[20] Use and derivative use immunity prohibits the use of testimony or any evidence derived from that testimony against the witness in a criminal prosecution.[21] Defendant's immunity argument is premised on a belief that he received full immunity from prosecution, i.e., transactional immunity.

A defendant who claims that he has received transactional immunity asserts, in essence, the existence of an agreement not to prosecute. As the Fifth Circuit held in **United States v. Castaneda**, 162 F.3d 832 (5th Cir.1998), "[n]onprosecution agreements ... are contractual in nature, and are therefore interpreted in accordance with general principles of contract law."[22] Such an

---

[18] Record Document No. 57, Transcript of Suppression Hearing, 26:21 – 27:5.

[19] **Kastigar v. United States**, 406 U.S. 441, 443, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

[20] **Kastigar,** 406 U.S. at 453.

[21] See **id.** at 452-53.

[22] **United States v. Castaneda**, 162 F.3d 832, 835 (5th Cir.1998).

agreement may be either express or implied.[23]  Applying contract law, the

defendant bears the burden of proving that there was a mutual manifestation of

assent – either verbally, or through conduct – to the agreement's essential

terms.[24] The court must evaluate both subjective and objective factors in

determining whether the defendant has carried his burden.[25]  However, a

Defendant's "subjective belief cannot, by itself, establish transactional

immunity."[26]

Applying the law to the facts of the instant case, it is clear from the record

that Defendant's "grant" of transactional immunity is based on nothing more than

his subjective belief.  In fact, Defendant admitted as much during the suppression

hearing:

> **Q.** Okay. As I understand this, then, apart from your word, and your word
> alone, you don't have anything today to evidence to the court that you
> had ever received immunity from the federal government?
>
> **A.** That's correct.
>
> **Q.** Also, to further that point, apart from your word and your word alone,
> there's nothing in evidence that you had even been offered immunity by
> the federal government?

---

[23] **United States v. Jimenez**, 256 F.3d 330, 347 (5th Cir. 2001).

[24] **Id.** (citing **United States v. McHan**, 101 F.3d 1027, 1034 (4th Cir. 1996)).

[25] **Jimenez**, 256 F.3d at 347 (citing **United States v. Robertson**, 582 F.2d 1356, 1366 (5th Cir. 1978) (en banc)).

[26] **Jimenez**, 256 F.3d at 348, n. 25.

**A.** That's correct.[27]

To be sure, during the suppression hearing, Defendant also testified that at no time during his grand jury testimony was immunity promised, offered, or even mentioned to him,[28] nowhere in Alexander's affidavit is it mentioned that Alexander and Salomon had discussed immunity,[29] he was not aware of any correspondence between Alexander and Salomon in which immunity was discussed,[30] and he received no letter from Salomon granting him immunity.[31] Indeed, the fact that Salomon continued to advise Defendant that Defendant's words might incriminate him, at the outset of the grand jury hearings, belies Defendant's contention that he was granted express or implied immunity.[32] Accordingly, the Court finds that there is insufficient evidence to establish that Defendant was granted immunity.

## II. Defendant Was Properly Advised of His Fifth Amendment Rights

Defendant complains that he was advised of some, but not all of his Fifth Amendment rights prior to testifying before the grand jury. Specifically, the

---

[27] Record Document No. 57, Transcript of Suppression Hearing, 44:13-21.

[28] **Id.** at 33:15 – 34:25, 36:19 – 37:10, 40:17 – 41:42.

[29] Record Document No. 57, Transcript of Suppression Hearing, 43:6-8.

[30] **Id.** at 44:5-8.

[31] **Id.** at 43:20 – 44:4.

[32] See *supra* nn. 1, 4, 11.

Defendant argues that:

> [T]he [Department of Justice] manual requires that the defendant, once he is placed under oath in the grand jury, that he be informed of his Constitutional rights. It is our position that he was not informed of his Constitutional rights. Albeit he was informed of a couple of them, he was not completely informed.[33]

When asked during the suppression hearing whether he believed that his rights were adequately explained to him in the grand jury hearing, Defendant explained:

> A.  Well, like I said, I wasn't aware of the fact that [Salomon] was reading me my rights as of, you know, you have the right to remain silent; anything you say can and will be – you know, had [Salomon] said that, I would have not said anything, you know.[34]

In opposition, the Government argues that Defendant was properly advised of his rights and he understood them.  In support of its argument, the Government points to the fact that Defendant was advised, at the outset of his grand jury testimony, that he had "the right to refuse to answer any question, the truthful answer might incriminate [him]" and "the right to consult with a lawyer outside this grand jury room," and that Defendant confirmed, both before the grand jury and during the suppression hearing, that he understood these rights.[35]

In determining whether the defendant's Fifth Amendment rights were violated, this Court's inquiry must begin and end with the United States

---

[33] Record Document No. 57, Transcript of Suppression Hearing, 5:6-11.

[34] Record Document No. 57, Transcript of Suppression Hearing, 78:25 – 79:8.

[35] Record Document No. 70, United States' Post-Hearing Brief in Opposition, p. 6.

Constitution, for it is well-established that the Department of Justice guidelines and policies do not create enforceable rights for criminal defendants.[36] Therefore, to the extent that Defendant's arguments are premised upon rights created by the Department of Justice guidelines, such arguments must be rejected.

The Fifth Amendment states, in pertinent part: "No person... shall be compelled in any criminal case to be a witness against himself."[37] In **United States v. Mandujano**, 425 U.S. 564, 578-79, 96 S.Ct. 1768, 1777-78, 48 L.Ed.2d 212 (1976), the Supreme Court concluded that the Fifth Amendment privilege against self-incrimination did not require suppression of statements even though

---

[36] See, e.g., **United States v. Fernandez**, 231 F.3d 1240, 1246 (9th Cir.2000) ("[I]t is clear that the USAM does not create any substantive or procedural rights."); **United States v. Craveiro**, 907 F.2d 260, 264 (1st Cir.1990) (same); **United States v. Piervinanzi**, 23 F.3d 670, 682 (2d Cir.1994) (same); **U.S. v. Wilson**, 413 F.3d 382, 389 (3rd Cir. 2005) (same); **United States v. Jackson**, 327 F.3d 273, 295 (4th Cir.2003) (same); **U.S. v. Cooks**, 589 F.3d 173, 184 (5th Cir. 2009) (same); **United States v. Myers**, 123 F.3d 350, 356 (6th Cir.1997) (Defendant who was target and subject of grand jury investigation was not entitled to suppression of his grand jury testimony based on government's failure to provide him with "target" letter and advice of rights form before he testified, in violation of internal operating procedures set out in Department of Justice manual; manual did not create enforceable rights); **United States v. Blackley**, 167 F.3d 543, 548-49 (D.C.Cir.1999) (same); see also U.S. v. Turner, 2006 WL 1980220, *4 (D.D.C. 2006) ("[T[he law is well-settled that the internal policies of the Department of Justice concerning "subjects" and "targets" do not create any enforceable rights.") (citing **United States v. North**, Crim. No. 88-0080-02, 1988 WL 148491, at *1, n. 2 ("The United States Attorney's Manual is not published in the United States Code or Code of Federal Regulations and none of its provisions are promulgated through the Federal Register. It does not have the force of law. Courts have held that internal Department of Justice policies do not create any substantive rights for defendants.")). The Supreme Court, in analogous contexts, has also concluded that Department policies governing its internal operations do not create rights which may be enforced by defendants against the Department. See **United States v. Caceres**, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); **Sullivan v. United States**, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954).

[37] U.S. Const. amend. V.

the witness was a putative defendant and was not given **Miranda**[38] warnings.  A

four-justice plurality concluded that a complete **Miranda**-like rights warning is not

required for a grand jury witness not in custody and that a witness appearing

before a grand jury does not have a constitutional right to be represented by

counsel.  In reaching this conclusion, the plurality stated:

> The [lower] court's analysis, premised upon the prosecutor's failure to give **Miranda** warnings, erroneously applied the standards fashioned by this Court in **Miranda**. Those warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody. **Miranda** addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against compulsory self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in police station interrogation. But the **Miranda** Court simply did not perceive judicial inquiries and custodial interrogation as equivalents: "[T]he compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation and trickery."[39]

> The plurality then concluded that "grand jury questioning[ ] take[s] place in

a setting wholly different from custodial police interrogation."[40]  The plurality,

however, did not conclude that no Fifth Amendment warnings were required: "The

fact that warnings were provided in this case to advise respondent of his Fifth

Amendment privilege makes it unnecessary to consider whether any warning is

---

[38] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[39] **Mandujano**, 425 U.S. at 579 (quoting **Miranda**, 384 U.S. at 461, 86 S.Ct. at 1620) (internal footnotes omitted).

[40] **Id.** at 580.

required."[41]

Justices Brennan and Marshall, concurring in the judgment, disagreed with the plurality's distinctions of the grand jury context:

> I would hold that, in the absence of an intentional and intelligent waiver by the individual of his known right to be free from compulsory self-incrimination, the Government may not call before a grand jury one whom it has probable cause-as measured by an objective standard-to suspect of committing a crime, and by use of judicial compulsion compel him to testify with regard to that crime.... Such a waiver could readily be demonstrated by proof that the individual was warned prior to questioning that he is currently subject to possible criminal prosecution for the commission of a stated crime, that he has a constitutional right to refuse to answer any and all questions that may tend to incriminate him, and by record evidence that the individual understood the nature of his situation and privilege prior to giving testimony.[42]

Subsequent to **Mandujano**, the Supreme Court has further hinted to **Miranda' s** inapplicability to the grand jury setting. In **Minnesota v. Murphy**, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the Court held that a statement made by a probationer to his probation officer without any prior warnings was properly admitted in a subsequent criminal proceeding. The Supreme Court initially recognized that **Miranda** was inapplicable because "there was no formal arrest or restraint on freedom of movement of the degree associated with a

---

[41] **Id.** at 582 n. 7.

[42] **Mandujano**, 425 U.S. at 598-600 (Brennan, J., concurring in the judgment) (footnotes omitted).

Justices Stewart and Blackmun, concurring in the result, did not reach the issues raised by either the plurality or Justice Brennan's dissent. 425 U.S. at 609, 96 S.Ct. at 1792. Justice Stevens did not participate in the decision. Thus, the plurality's reasoning represented the views of four justices, with two disagreeing and three not expressing any views.

formal arrest."[43] Responding to the contention that some warnings were required because the probation officer could compel attendance and truthful answers, the Court stated:

> In our view, this factor subjected [the probationer] to less intimidating pressure than is imposed on grand jury witnesses, who are sworn to tell the truth and placed in a setting conducive to truthtelling. Although warnings in both contexts might serve to dissipate any possible coercion or unfairness resulting from a witness' misimpression that he must answer truthfully even questions with incriminating aspects, we have never held that they must be given to grand jury witnesses, and we decline to require them here since the totality of the circumstances is not such as to overbear a probationer's free will.

The few circuits that have addressed this issue have likewise been hesitant to require, as a matter of constitutional law, **Miranda**-like warnings to suspects appearing before the grand jury.[44]

In light of the Supreme Court's opinions in **Mandujano** and **Murphy**, and

---

[43] **Id.** at 430, 104 S.Ct. at 1144 (quotation marks and citations omitted).

[44] See **Myers**, 123 F.3d at 362 (refusing to require that Miranda warnings be given to a suspect appearing before a grand jury, but finding that the witness was adequately informed of his Fifth Amendment privilege against self-incrimination where witness was warned on the record, just prior to testifying, that he had a right to refuse to answer any question if it would incriminate him, a right to consult with an attorney, and that anything he said could be used against him); **United States v. Gillespie**, 974 F.2d 796, 803-05 (7th Cir.1992) (finding that a witness' receipt of a written Advice of Rights form days before the grand jury hearing satisfied any constitutional mandate that may exist even where the witness did not receive oral warnings immediately before testifying and was not warned that he was a target); **United States v. Goodwin**, 57 F.3d 815, 817 (9th Cir.1995) ( "The key to [the defendant's] Fifth Amendment protection is that he not feel compelled to testify. The record reflects that [he] was more than adequately instructed that he was under no compulsion whatsoever to make any self-incriminating statements."); **Labbe v. Berman**, 621 F.2d 26, 29 (1st Cir.1980) (holding that Miranda warnings not required for suspect testifying at an inquest and that the fact that the commonwealth failed to administer any warnings to the suspect prior to his inquest did not render his inquest testimony inadmissible when the suspect's lawyer had told him what rights he had).

the opinions rendered by several circuit courts, the Court is satisfied that the warnings given to Defendant adequately informed him of his Fifth Amendment privilege against self-incrimination. Defendant was warned on the record, just prior to testifying, that he had a right to refuse to answer any question if it would incriminate him and that he had a right to consult with an attorney.[45] Moreover, because Defendant was given these warnings, any compulsion to incriminate himself undoubtedly was substantially reduced.[46] Accordingly, Defendant's Motion, insofar as it requests dismissal of the indictment or suppression of evidence based on the allegation that he was not properly advised of his Fifth Amendment Rights, is denied.

## III. Defendant's Appearance and Testimony Before the Grand Jury Did Not Violate His Constitutional Rights

Defendant next argues that his "indictment should be quashed because he made incriminating statements to a grand jury prior to indictment."[47] The Court finds that Defendant was properly summoned before the grand jury and that he voluntarily waived his privilege against self incrimination by failing to invoke his privilege and, instead, testifying before the grand jury. Therefore, the indictment

---

[45] Cf. **United States v. Washington**, 431 U.S. 181, 191, 97 S.Ct. 1814, 1810, 52 L.Ed.2d 238 (1977) ("If anything, the proximity of the warnings to respondent's testimony and the solemnity of the grand jury setting seem likely to increase their effectiveness.").

[46] Cf. **id.** at 188, 97 S.Ct. at 1819 (stating that the warnings given eliminated "any possible compulsion to self-incrimination which might otherwise exist").

[47] Record Document No. 69, Defendant's Post-Hearing Brief in Support, p. 3.

should not be quashed nor should evidence be suppressed.

## A. Summoning Defendant Before the Grand Jury Did Not Violate His Constitutional Rights

Defendant contends that it was a violation of his rights under the Fifth Amendment to require him to be sworn and examined before the grand jury, because its investigation was in reality an attempt to secure, from his own mouth, evidence upon which to indict him. Defendant also argues that his grand jury testimony "should be excluded because at the time he testified, he had not been given notice that he was under investigation."[48]

First, the Court notes that nothing in the evidence indicates that the defendant was called before the grand jury for the purpose, on the part of the Government, of making a criminal case against him. Instead, from all that appears, the Government was aware that the defendant had information which would be useful in making a case against Nnanta Ngari, the owner and operator of Unique.

Second, the appearance of a witness before the grand jury in response to a subpoena does not violate his rights against self-incrimination, even though he is later indicted by the same grand jury.[49] Defendant was subject to call as a

---

[48] Record Document No. 69, Defendant's Post-Hearing Brief in Support, p. 6.

[49] Cf. **United States v. Dionisio**, 410 U.S. 1, 10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 77 n. 8 (1973)("(t)he obligation to appear is no different for a person who may himself be the subject of the grand jury inquiry."); see also **United States v. Scully**, D.C.S.D.N.Y.1954, 119 F.Supp. 225, 226, affirmed 2 Cir., 1955, 225 F.2d 113, 114, certiorari denied 350 U.S. 897, 76

witness before the grand jury and had only the right of any witness to decline to answer when interrogated concerning matters which might tend to incriminate him.[50] Therefore, Defendant's contention that his Fifth Amendment rights were violated when the Government subpoenaed him before the grand jury is without merit.

Third, the Defendant's argument that the Government failed to provide him with adequate notice, at the time he testified, that he was under investigation must fail. Again, there is no evidence that the defendant was under investigation at the time he testified before the grand jury, and, even assuming that he was, the Supreme Court, in **United States v. Washington**, held that the Fifth Amendment does not require that a grand jury witness be warned he is a potential target of the grand jury investigation.[51] Specifically, the Supreme Court stated:

> [W]e do not understand what constitutional disadvantage a failure to give potential defendant warnings could possibly inflict on a grand jury witness, whether or not he has received other warnings. It is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury, and witnesses [sic] who are not grand jury targets are protected from compulsory self-incrimination to the same extent as those who are. Because target witness status neither enlarges nor diminishes the constitutional protection

---

S.Ct. 156, 100 L.Ed. 788; **United States v. Klein**, D.C.S.D.N.Y.1954, 124 F.Supp. 476, 478; **United States v. Olson**, D.C.E.D.N.Y.1955, 134 F.Supp. 481, 483.

[50] See **Mulloney v. U.S.**, 79 F.2d 566 (1st Cir. 1935) (aptly quoting Professor Wigmore for the proposition that the privilege against self-incrimination is 'an option of refusal and not a prohibition of inquiry. The mere summoning of a witness before a grand jury gives no basis for the assumption that his constitutional privilege will be impaired. His duty is to answer frankly until some question is propounded, the answer to which might tend to self-incrimination).

[51] **Washington**, 431 U.S. at 189.

against compelled self-incrimination, potential defendant warnings add nothing of value to protection of Fifth Amendment rights.[52]

The Court, therefore, finds that Defendant's Constitutional rights were not violated when he was called to appear before the grand jury and that the Government had no duty to provide the defendant with notice of his status prior to his grand jury testimony.

### B. Defendant Voluntarily Waived His Privilege Against Self-Incrimination Before the Grand Jury [53]

In **Mandujano**, the Supreme Court stated as follows:

[T]he witness, though possibly engaged in some criminal enterprise, can be required to answer before a grand jury, so long as there is no compulsion to answer questions that are self-incriminating; the witness can, of course, stand on the privilege, assured that its protection is as broad as the mischief against which it seeks to guard. The witness must invoke the privilege, however, as the Constitution does not forbid the asking of criminative questions.

The (Fifth) Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment.

---

[52] **Id.**

[53] The term "waiver" is commonly used in relation to the loss of one's fifth amendment rights, but the Supreme Court has abandoned this term. In **Minnesota v. Murphy**, the Supreme Court stated that "[w]itnesses who failed to claim the privilege were once said to have 'waived' it, but we have recently abandoned the 'vague term,' **Green v. United States**, 355 US 184, 191, 2 L Ed 2d 199, 78 S Ct 221 [225], 7 Ohio L Abs 202, 61 ALR2d 1119 (1957), and 'made clear that an individual may lose the benefit of the privilege without making a knowing and intelligent waiver.' **Garner v. United States**, [424 U.S. 648] ... at 654, n 9, 47 L Ed 2d 370, 96 S Ct 1178 [1182, n. 9]." **Minnesota v. Murphy**, 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409, 419 (1984). The term "waiver" is still used in common parlance and will be used herein for its shorthand value but with the clarification previously stated in mind.

Absent a claim of the privilege, the duty to give testimony remains absolute.[54]

In the instant case, it is undisputed that Defendant appeared before the grand jury on three occasions; he was advised that he had "the right to refuse to answer any question, the truthful answer might incriminate [him]" on all three occasions; he stated that he understood this right, and; despite these warnings, he continued to give testimony before the grand jury. When Defendant requested to speak with an attorney during the February 18, 2009, grand jury hearing, the questioning immediately ceased. On the advice of his counsel, Defendant appeared before the grand jury on March 4, 2009, and again gave testimony. Given these facts, this Court cannot conclude that Defendant was "compelled" to testify against himself within the meaning of the Fifth Amendment.

Defendant also challenges the voluntariness of his grand jury testimony, arguing that evidence of his testimony should be suppressed because (1) he had objective reason to believe he was not under investigation; (2) he was a putative defendant while testifying, and the subsequent prosecution regards activity about which he testified; and/or (3) the Government used unfair tactics to elicit his testimony. The Court finds that there is nothing in the record or the law to support Defendant's contentions.

Defendant relies primarily on **United States v. Strickland**, 493 F.2d 182

---

[54] **Mandujano**, 425 U.S. at 574-575 (citations omitted).

(5th Cir.1974), a Fifth Circuit case, to support his argument. In **Strickland**, the defendant was shot while attempting to purchase drugs.[55] Subsequently, the defendant was interviewed in the hospital regarding the shooting and assured by a detective that the police were only interested in investigating the shooting.[56] After the defendant gave his testimony, he was indicted on drug charges. The district court suppressed statements made by Strickland after the detective disavowed any interest in a narcotics prosecution, but admitted those statements made by Strickland to the detective before the detective made any assurances to Strickland.[57] The Fifth Circuit made no mention as to whether suppression of the evidence was proper, but instead held that "the trial court committed no error in *allowing* the introduction of the evidence."[58] Therefore, contrary to Defendant's reading of **Strickland**, the Court did not necessarily "find that it was proper for the district court to *exclude* any admissions made by the defendant."[59] Moreover, the facts in **Strickland** are clearly distinguishable from those at hand. In **Strickland**, the defendant was told by the detective that the police "were only interested in

---

[55] **Strickland**, 493 F.2d 184.

[56] **Id.**

[57] **Id.** at 185.

[58] **Strickland**, 493 F.2d at 186 (citing **Andrews v. United States**, 309 F.2d 127, 129 (5th Cir. 1962)) (emphasis added).

[59] Record Document No. 69, Defendant's Post-Hearing Brief in Support, p. 5.

investigating the assault" and that "my interest is not in you."[60]  In the instant

case, Defendant testified that Salomon told him "I didn't hear anything in your

testimony that would suggest that you are in any kind of trouble."[61]  When

comparing the two statements ("my interest is not in you" and "I didn't hear

anything... that would suggest"), it becomes obvious that, unlike the detective in

**Strickland**, Salomon never disavowed interest in investigating or prosecuting the

instant defendant.  Even assuming, *arguendo*, that Salomon's statements could

be seen as assurances not to investigate or prosecute the defendant, any

compulsion to incriminate himself was undoubtedly substantially reduced by the

warnings provided at the outset of the grand jury testimony.[62]

The evidence is void of any indication that the Government called the

defendant before the grand jury for the purpose of making a criminal case against

him.  Moreover, there is no evidence that the Government "set a trap" for

defendant, used unfair tactics to elicit his testimony, or acted in bad faith.

Defendant was made aware of his rights at the commencement of the grand jury

hearings, he understood these rights, he was not a putative defendant when

called to testify, and the Government never unequivocally assured him that he

---

[60] **Strickland**, 493 F.2d at 184.

[61] Record Document No. 57, Transcript of Suppression Hearing, 71:21 – 72:13.

[62] See, e.g., **Washington**, 431 U.S. at 188, 97 S.Ct. at 1819 (stating that the warnings given eliminated "any possible compulsion to self-incrimination which might otherwise exist").

was not being investigated or that he would not be prosecuted. Considering the evidence, the Court finds that the defendant voluntarily waived his privilege against self incrimination.

## IV. Suppression of Evidence is Not Warranted Under this Court's Supervisory Authority

In exceptional cases, a court's supervisory power exists as a tool to control prosecutorial misconduct before the grand jury.[63] "In the exercise of its supervisory authority, a federal court 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.' "[64] The Second Circuit, in fact, in **United States v. Jacobs**, 547 F.2d 772, 778 (2d Cir.1976), cert. dismissed, 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978), exercised its supervisory powers to suppress grand jury testimony that was obtained from a target who was not given an Advice of Rights form and the accompanying warnings required by the Department of Justice Manual. Although this supervisory power has been largely eroded since **Jacobs**,[65] even assuming that this Court did have the power to suppress grand jury testimony upon a showing of prosecutorial misconduct, no such evidence exists that might trigger

---

[63] **Myers**, 123 F.3d at 355.

[64] **Bank of Nova Scotia v. United States**, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (quoting United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983)).

[65] See **Myers**, 123 F.3d at 355-358 (6th Cir. 1997).

its invocation in the instant case.[66]

## V. Suppression of Documents Produced by Defendant Pursuant to the Grand Jury Subpoenas is Not Warranted

Defendant contends that the documents he produced pursuant to the grand jury subpoenas should be suppressed because he was "compelled" to incriminate himself in violation of the Fifth Amendment. Nevertheless, there is no evidence that these documents would actually tend to incriminate him. Without knowledge of whether the defendant actually produced all of the documents as called for by the subpoenas, or the contents of those documents, the danger of self-incrimination is not readily apparent and the Court is left to speculate as to the danger posed by production. In order to invoke the Fifth Amendment, "[t]he danger of self-incrimination must be real, not remote or speculative" and to the extent that the danger "is not readily apparent ... the burden of establishing its existence rests on the person claiming the privilege."[67] Because Defendant has failed to meet his burden of establishing the existence of danger, his motion to suppress documents produced pursuant to the grand jury subpoenas should be denied.

## CONCLUSION

---

[66] See *supra*, Section III (B).

[67] **Estate of Fisher v. Comm'r of Internal Revenue Serv.**, 905 F.2d 645, 649 (2d Cir.1990) (citations omitted); **Diehl v. Commissioner**, 862 F.2d 318 (9th Cir. 1988) ("[w]here, as here, the danger of self-incrimination is not readily apparent, the burden of establishing any hidden danger rests with the person claiming the privilege.") (citations omitted).

Accordingly, for the foregoing reasons assigned,

IT IS ORDERED that the Motion to Dismiss, or in the Alternative, to Suppress (Doc. No. 49), filed by the defendant, Henry Jones , is **DENIED**.

Baton Rouge, Louisiana, this 28th day of January, 2011.

RALPH E. TYSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA